UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TONY McGEE,

                                  Plaintiff,

                                                                   9:10-CV-0238

                              v.                                (MAD/GHL)

MS. WEST, *Correspondence Office*, and
MS. D. CASEY, *Correspondence Employee*,

                                  Defendant.
_____

APPEARANCES:                                                 OF COUNSEL:

TONY McGEE, 08-A-6251
Plaintiff, *pro se*
Great Meadow Correctional Facility
Box 51
Comstock, NY 12821

HON. ERIC T. SCHNEIDERMAN                  CHARLES J. QUACKENBUSH, ESQ.
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, New York 12224

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION AND ORDER

       This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Mae A. D'Agostino, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).  Generally, Plaintiff Tony McGee alleges that Defendants "Ms. West" and "Ms. D. Casey" tampered with his mail.  Dkt. No. 1.

       Currently pending before the Court is Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  Dkt. No. 27.  Plaintiff submitted several responses, which will be described below. Dkt. Nos. 33-37.

I.  **BACKGROUND**

   A.  **Summary of the Second Amended Complaint**[1]

Plaintiff alleges that the following four incidents occurred while he was incarcerated at Great Meadow Correctional Facility:

   **1.  May of 2009**

In May of 2009, Plaintiff requested a clothing catalog from a company. Dkt. No. 25 at 5. Plaintiff claims that he never received this catalog. *Id.* However, Plaintiff states that he received a "new" catalog and a blanket two months later. *Id.* It appears that Plaintiff is arguing that somehow the initial catalog he requested was wrongfully destroyed.

   **2.  May 11, 2009**

Plaintiff sent a request to North Carolina for his birth certificate. Dkt. No. 25 at 4, 5. Plaintiff paid a $15.00 fee. *Id.* Plaintiff never received his birth certificate. *Id.* Plaintiff alleges that he found out later that Defendant Casey took his birth certificate out of the facility. *Id.*

   **3.  November 27, 2009**

On November 27, 2009, Plaintiff sent an item marked "legal mail" to a lawyer in Brooklyn. Dkt. No. 25 at 5. He alleges that Defendant West "steamed . . . open" the envelope and destroyed the contents. *Id.*

   **4.  October 21, 2010**

On October 21, 2010, Plaintiff received a "medicare catalog." Dkt. No. 25 at 4. The next day, he sent a "certified mail legal response letter to medicare." *Id.* Defendant West "ripped open"

---

[1] The Court accepted Plaintiff's second amended complaint for filing. 1/14/11 Text Order. Defendants had not answered or moved before the Court accepted the second amended complaint.

this letter and then put the letter in a new envelope with a new certified mail receipt. *Id.* at 4-5. Plaintiff alleges that this is "criminal tampering."

    **B.**    **Summary of Grounds in Support of Defendants' Motion**

Defendants argue that the motion to dismiss should be granted because Plaintiff failed to exhaust administrative remedies prior to commencing this action. Dkt. No. 27. Defendants also assert that Plaintiff failed to present claims upon which relief may be granted. *Id.*

    **C.**    **Summary of Plaintiff's Responses**

        **1.**    **Dkt. Nos. 33-37**

Plaintiff admits that he never wrote to the Superintendent or CORC. Dkt. No. 33 at 1; Dkt. No. 35 at 1. Plaintiff appears to argue that if he did write to the Superintendent or CORC, he would have had to wait for their responses, which somehow would have precluded an attorney in Brooklyn from commencing a civil action on his behalf. *Id.*

Plaintiff also reiterates the following: that Defendant Casey intercepted the delivery of his birth certificate; that Defendant Casey steamed open legal mail Plaintiff sent to an attorney before destroying the letter; that Defendant West opened a letter addressed to Medicare and placed it in a new envelope; that his birth certificate was stolen. Dkt. No. 33 at 3; Dkt. No. 35 at 2-3.[2]

---

[2] Plaintiff also asserts, for the first time, that he tried to send legal mail to "Disability Advocates" on March 21, 2011. Dkt. No. 33 at 4; Dkt. No. 35 at 4, Dkt. No. 36. Plaintiff alleges that the envelopes were destroyed. *Id.* Plaintiff also asserts, for the first time, that he was denied access to the law library on April 6, 2011, and April 15, 2011, by an unknown sergeant. Dkt. No. 33 at 6-7; Dkt. No. 34; Dkt. No. 35 at 5-6; Dkt. Nos. 36-37. To the extent that Plaintiff intends to rely on these allegations, I am recommending that Plaintiff be allowed to amend his second amended complaint. If this recommendation is adopted, Plaintiff should include in the body of the third amended complaint all facts and claims upon which he relies, including those set forth in the second amended complaint and in any grievance or other document.

**II.   LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM**

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not shown-that the pleader is entitled to relief." *Id.* at 1950 (internal citation and punctuation omitted).

In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949.

A prisoner has no independent duty to plead facts plausibly suggesting that he exhausted his available administrative remedies in order to state an actionable claim under 42 U.S.C. § 1983.

4

*Jones v. Bock*, 549 U.S.199, 211-17 (2007). "[T]his is not to say that failure to exhaust cannot be a basis for dismissal for failure to state a claim." *Id.* at 216. If a prisoner chooses to plead facts regarding exhaustion, and those facts plausibly suggest that he failed to exhaust his available administrative remedies, then his complaint may be dismissed for failure to state a claim. *Id.* at 215-16.

### III. ANALYSIS

#### A. Exhaustion Requirement

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under § 1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). In order to properly exhaust administrative remedies under the PLRA, inmates are required to complete the administrative review process in accordance with the rules applicable to the particular institution to which they are confined. *Jones v. Bock*, 549 U.S. 199, 218 (2007).

In New York state prisons, the Department of Correctional Services ("DOCS") has a well-established three-step inmate grievance program ("IGP"), which is the proper procedure for exhausting most, but not all, claims. N.Y. Comp.Codes R. & Regs. tit. 7, § 701.7. First, an inmate must file a complaint with the facility's IGP clerk within twenty-one calendar days of the alleged occurrence. N.Y. Comp.Codes R. & Regs. tit. 7, § 701.5(a). A representative of the facility's inmate grievance resolution committee ("IGRC") has sixteen calendar days from receipt of the grievance to

informally resolve the issue. *Id.* at (b)(1). If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance, and issues a written decision within two working days of the conclusion of the hearing. *Id.* at (b)(2). At the second step, a grievant may appeal the IGRC decision to the facility's superintendent within seven calendar days of receipt of the IGRC's written decision. *Id.* at (c). At the third step, a grievant may appeal to the Central Office Review Committee ("the CORC") within seven working days of receipt of the superintendent's written decision. *Id.* at (d). "To properly exhaust administrative remedies, an inmate must file an appeal with the CORC." *Torres v. Carry*, 672 F. Supp. 2d 338, 343 (S.D.N.Y. 2009).

The Second Circuit has held that a three-part inquiry is appropriate where a prisoner has failed to exhaust his available administrative remedies. *Hemphill v. State of New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004). First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." *Hemphill*, 380 F.3d at 686 (citation omitted). Second, if those remedies were available, "the court should ... inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id.* (citations omitted). Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Id.* (citations and internal quotations omitted).

Here, in the second amended complaint, when asked to state the steps taken to present the facts relating to his complaint in the grievance program, Plaintiff stated only that he submitted a grievance, which was denied. Dkt. No. 25 at 2. Plaintiff attached a copy of the denial notice, which indicates that the grievance was denied "as untimely as the incident was in excess of the 21 day time limit as set by [DOCS rules]." Dkt. No. 25-1 at 9. As noted, Plaintiff asserts that he failed to appeal to the Superintendent or CORC because an attorney in Brooklyn would have been prevented from timely commencing a lawsuit on his behalf if Plaintiff had waited for a response from the Superintendent or CORC. Dkt. No. 33 at 1; Dkt. No. 35 at 1.

**Regarding the first inquiry set forth in *Hemphill*,** I note that an administrative remedy was available to Plaintiff. Plaintiff expressly states that there was a prisoner grievance procedure at Great Meadow Correctional Facility. Dkt. No. 25 at ¶ 4. Thus, an administrative remedy was available to Plaintiff.

**Regarding the second inquiry set forth in *Hemphill*,** the court is required to determine if a defendant may have forfeited the affirmative defense by failing to raise or preserve it or if a defendant took some affirmative action to prevent plaintiff from using the grievance procedure, such as beating, denying grievance forms and writing implements, or threatening retaliation. *Cisson v. Middaugh*, No. 9:09-CV-260, 2011 WL 2579800, at *3 (N.D.N.Y. Feb. 2, 2011) (citing *Ruggiero v. County of Orange*, 467 F.3d 170, 178 (2d Cir. 2004) (citations omitted)), *accepted*, 2011 WL 2559568 (N.D.N.Y. June 27, 2011) (Scullin, J.).

First, Defendants did not forfeit the administrative defense of non-exhaustion by failing to raise or preserve it. Defendants have preserved the exhaustion defense by raising it in their motion

to dismiss.³  Second, there is no allegation that Defendants' own actions inhibited Plaintiff's exhaustion of remedies.

**Regarding the third inquiry set forth in *Hemphill***, when a prisoner plausibly alleges special circumstances that caused the prisoner's failure to comply with the grievance procedures, the court may waive the exhaustion requirement.  *See*, *e.g.*, *Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006).  "The special circumstances inquiry 'must be determined by looking at the circumstances which might understandably lead usually uncounselled prisoners to fail to grieve in the normally required way.'"  *Jones v. Fischer*, No. 07 Civ. 7589, 2008 WL 3174510, at *4 (S.D.N.Y. 2008) (quoting *Giano v. Goord*, 380 F.3d 670, 678 (2d Cir. 2004).  "Findings of special circumstances have been primarily established where plaintiffs acted pursuant to reasonable interpretations of the regulations, thus preventing exhaustion."  *Winston v. Woodward*, No. 05 Civ. 3385, 2008 WL 2263191, at *10 (S.D.N.Y. May 30, 2008).

Here, Plaintiff has alleged no special circumstances that caused his failure to comply with the grievance procedures. "Indeed, '[a]bsent an allegation by the inmate that his failure to exhaust was based on a reasonable, but erroneous interpretation of prison regulations, the special circumstances exception is generally inapplicable.' "  *Almanzar v. Newland*, No. 08 Civ. 8612, 2010 WL 1379739, at *6 (S.D.N.Y. Mar. 26, 2010) (quoting *McDowall v. Metropolitan Corr. Ctr.*, No. 08-Civ-8329, 2010 WL 649744, at *7 n.4 (S.D.N.Y. Feb. 22, 2010)).  To the extent that Plaintiff is arguing that the attorney's need to timely commence a lawsuit on his behalf constituted a special circumstance, I find this argument unpersuasive.  Therefore, I recommend that Defendants' motion to dismiss for failure to exhaust be granted.

---

³ No answer was filed in this matter.

**2.     Failure to State a Cause of Action**

  **a.     Theft of personal property**

As noted, Plaintiff alleges that Defendant Casey took his birth certificate "out of Great Meadow Correctional Facility." Dkt. No. 25 at 4. Defendants first argue that Plaintiff is asserting a claim for "conversion and/or damage to plaintiff's personal property." Dkt. No. 27-1 at 7. Defendants argue that such a claim cannot be pursued in federal court pursuant to 42 U.S.C. § 1983. *Id.* (citations omitted). Defendants are correct.

> Even an intentional deprivation of an inmate's property that is random and unauthorized does not give rise to a due process claim so long as "adequate state post-deprivation remedies are available." *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). New York law provides such a remedy in the form of an action before the New York Court of Claims. *See* N.Y. Ct. Cl. Act § 9 (McKinney 1989 & Supp. 2005); *Diaz v. Coughlin*, 909 F. Supp. 146, 150 (S.D.N.Y.1995) (dismissing property deprivation due process claim because inmate could bring action in Court of Claims); *McCorkle v. Juchenwicz*, No. 94 Civ. 6363(TPG), 1999 WL 163205, at *4 (S.D.N.Y. Mar. 23, 1999) (same); *Gadson v. Goord*, No. 96 Civ. 7544(SS), 1997 WL 714878, at *7 (S.D.N.Y. Nov. 17, 1997) (same); *Ifill v. Goord*, No. 03-CV-355S, 2005 WL 2126403, at *6 (W.D.N.Y. Sept. 1, 2005) (same).

*Dorsey v. Fisher*, No. 9:09-CV-1011, 2010 WL 2008966, at *11 (N.D.N.Y. May 19, 2010) (Sharpe, J.) (citing *Collins v. Goord*, 438 F. Supp. 2d 399, 418-19 (S.D.N.Y. 2006) (citations omitted); *see also Leitzsey v. Coombe*, 998 F. Supp. 282, 289 (W.D.N.Y. 1998) ("[A] claim for the loss of property does not lie in federal court if the state courts offer an adequate remedy for such a deprivation.") (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).[4] For the same reasons, Plaintiff may not pursue his theft of property claim in this court.

---

[4] New York Court of Claims Act, Section 9, permits an inmate to pursue a claim for deprivation of property against the State of New York in the New York Court of Claims and therefore provides a remedy for such claims. *Leitzsey*, 998 F. Supp. at 289-90.

9

### b. Mail

As noted, Plaintiff alleged that Defendant West opened a letter to an attorney in Brooklyn, which was marked "legal mail," and destroyed the contents. Dkt. No. 25 at 5. Plaintiff also alleges that Defendant West opened a letter to "medicare" and then put the letter in a new envelope with a new certified mail receipt. *Id.* at 4-5. Plaintiff further appears to allege that someone wrongfully destroyed a clothing catalog that he requested. *Id.* at 5. Defendants argue that these claims should be dismissed because Plaintiff "has identified no non-frivolous litigation matter, much less any actual injury thereto." Dkt. No. 27-1 at 7.

Under the First Amendment, prisoners have a right to "the free flow of incoming and outgoing mail." *Johnson v. Goord*, 445 F.3d 532, 534 (2d Cir. 2006) (internal citation omitted); *see also Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003). In balancing the competing interests implicated in restrictions on prison mail, courts have "consistently afforded greater protection to legal mail than to non-legal mail." *Johnson v. Goord*, 445 F.3d at 534 (internal citation omitted); *see also Davis v. Goord*, 320 F.3d at 351. A prisoner's right to receive and send mail, however, may be regulated. *Johnson v. Goord*, 445 F.3d at 534 (citation omitted); *see also Davidson v. Mann*, 129 F.3d 700, 702 (2d Cir. 1997) (upholding the validity of a prison regulation limiting inmates' purchases of stamps for non-legal mail). Such regulation "is valid if it is reasonably related to legitimate penological interests." *Johnson v. Goord*, 445 F.3d at 534 (internal quotation marks and citation omitted); *Rodriguez v. James*, 823 F.2d 8, 12 (2d Cir. 1987) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987) ). To state a valid First Amendment "free speech" claim involving incoming legal mail, the plaintiff must allege that prison officials regularly and unjustifiably interfered with the incoming legal mail. *Davis v. Goord*, 320 F.3d at 351 (citation omitted). However, the Second

Circuit has held that "as few as two incidents of mail tampering could constitute an actionable violation (1) if the incidents suggested an ongoing practice of censorship unjustified by a substantial government interest, or (2) if the tampering unjustifiably chilled the prisoner's right of access to the courts or impaired the legal representation received." *Id.* at 351.

In this case, Plaintiff fails to allege facts plausibly suggesting that any Defendant took actions, with regard to Plaintiff's mail, that were so numerous and/or severe as to either (1) rise to the level of a regular or ongoing interference with Plaintiff's incoming or outgoing legal mail, or (2) chill Plaintiff's right of access to the courts or legal representation. *See Cagle v. Perry*, No. 9:04-CV-1151, at *12 (N.D.N.Y. Oct. 24, 2007) (McAvoy, J.) (same). Therefore, I recommend that these claims be dismissed for failure to state causes of action.

### 3. Leave to Amend

Where a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it." *Cuoco*, 222 F.3d at 112 (citation omitted). Here, Plaintiff has admitted that he has failed to exhaust his administrative remedies. However, in light of the special solicitude afforded to *pro se* litigants, I recommend that Plaintiff be granted leave to amend. *See Hilson v. Maltese*, No. 9:09-CV-1373, 2011 WL 767696, at *2 (N.D.N.Y. Feb. 28, 2011) (Mordue, C.J.) (granting leave to amend where Plaintiff failed to exhaust administrative remedies). Moreover, I note that Defendants have never filed an answer or any other dispositive motion in this case.

Plaintiff is advised that, if he submits a third amended complaint, it will completely replace and supersede all previous complaints.  Thus, he should include in the body of the third amended complaint all facts and claims upon which he relies, including those set forth in the previous complaints and in any grievance or other document.  The Court suggests that in drafting a third amended complaint, Plaintiff set forth in separate numbered paragraphs the alleged acts of misconduct; the date on which they occurred; the names of all individuals who participated in the misconduct; and the location where the alleged misconduct occurred.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion to dismiss (Dkt. No. 27) be **GRANTED**; and it is further

**RECOMMENDED** that Plaintiff may file a third amended complaint **within thirty (30) days** of the filing date of any Order adopting this Report-Recommendation; and it is further

**RECOMMENDED**, that if Plaintiff fails to timely file a third amended complaint, the Clerk enter judgment dismissing this action without further order of this Court due to Plaintiff's failure to comply with the terms of any Order adopting this Report and Recommendation; and it is further

**ORDERED**, that the Clerk serve copies of the electronically-available-only decisions cited herein on Plaintiff.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated: August 31, 2011
      Syracuse, New York

*/s/ George H. Lowe*
George H. Lowe
United States Magistrate Judge

13